IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| ANDRE JENNINGS, ) | |
| ) | |
| Plaintiff, ) | Case No.: 1:23-CV-14099 |
| ) | |
| v. ) | Judge: John J. Tharp, Jr. |
| ) | |
| ED NAPLETON ELMHURST IMPORTS ) | |
| INC., ) | |
| ) | |
| Defendant. ) | |

**DEFENDANT'S MEMORANDUM OF LAW IN SUPPORT OF ITS
MOTION TO COMPEL ARBITRATION AND DISMISS PLAINTIFF'S COMPLAINT**

Defendant, Ed Napleton Elmhurst Imports, Inc. ("Napleton"), by and through its attorneys, Fisher & Phillips, LLP, pursuant to 9 U.S.C. §§ 3 and 4, hereby submits this Memorandum of Law in support of its Motion for an Order compelling arbitration of all claims in Plaintiff Andre Jennings' ("Plaintiff") Complaint and dismissing Plaintiff's Complaint, with prejudice, pursuant to Federal Rule of Civil Procedure 12(b)(1).[1]

**INTRODUCTION**

As a condition of his continued employment with Napleton, Plaintiff entered into a Non-Solicitation Agreement and Agreement to Arbitrate Employment Claims ("Arbitration Agreement") with Napleton that required, among other things, Plaintiff to arbitrate any claims he filed against the Company relating to his employment. Although Plaintiff most certainly was aware of the Arbitration Agreement (after all, he signed it) and his contractual obligation to arbitrate his claims, Plaintiff filed the instant Complaint against Napleton. There is no justification for Plaintiff's attempt to circumvent the binding agreement to arbitrate because the Arbitration

---

[1] Alternatively, Napleton requests that the Court stay the current proceedings pending the outcome of binding arbitration of Plaintiff's claims.

Agreement and the Federal Arbitration Act ("FAA") mandate that Plaintiff's claims be heard exclusively in an arbitral forum. Therefore, for the reasons established below, Napleton respectfully requests that this Court grant its motion to: (1) compel arbitration for the claims asserted in Plaintiff's Complaint against Napleton pursuant to 9 U.S.C. §§ 3 and 4; and (2) dismiss Plaintiff's Complaint for lack of subject matter jurisdiction pursuant to Fed. R. Civ. P. 12(b)(1).

**I.      STATEMENT OF RELEVANT FACTS**

Napleton is an automotive dealership in Elmhurst, Illinois selling new Kias and used cars. *See* Declaration of Amanda Grayson, attached as Exhibit A, ¶ 2. Plaintiff is a former sales employee at Napleton. *See id.* ¶ 5. Plaintiff was hired by Napleton on April 23, 2019. *Id.* ¶ 3. In September 2020, as a condition of continued employment, Napleton presented Plaintiff with a Non-Solicitation Agreement and Agreement to Arbitrate Employment Claims. *See* Non-Solicitation Agreement and Agreement to Arbitrate Employment Claims ("Arbitration Agreement"), attached as Exhibit B; *see also* Exhibit A, ¶ 4. On September 30, 2020, Plaintiff reviewed, assented to, and agreed to enter into the Arbitration Agreement relating to his employment. *See id.*

The Arbitration Agreement, which Plaintiff voluntarily executed, specifically states, in pertinent part, as follows:

ARBITRATION

> I AND THE COMPANY AGREE to utilize binding arbitration as the sole and exclusive means to resolve all disputes that may arise out of or be related in any way to my employment with the Company, its affiliates, parents, subsidiaries, divisions and/or related companies. I and the Company each specifically waive and relinquish our respective rights to bring a claim against the other in a court of law and to have a trial by jury. Both I and the Company agree that any claim, dispute, and/or controversy that I may have against the Company (or its affiliates, parents, subsidiaries, divisions, related companies, owners, directors, officers, managers,

employees, or agents), or the Company may have against me, shall be submitted to and determined exclusively by binding arbitration under the Federal Arbitration Act ("FAA"). I acknowledge and agree that the FAA applies to this Agreement because the business of the Company involves interstate commerce. Included within the scope of this Agreement are all disputes, whether based on tort, contract, statute (including but not limited to, any claims of discrimination, harassment and/or retaliation whether they be based on the Title VII of the Civil Rights Act of 1964, as amended, or any other state or federal law or regulation), equitable law, or otherwise. The only exceptions to binding arbitration shall be for claims arising under the National Labor Relations Act which are brought before the National Labor Relations Board, claims for medical and disability benefits under state workers' compensation laws, claims for unemployment insurance, or other claims that are not subject to arbitration under current federal law. I and the Company acknowledge that by signing or refusing to sign this Agreement, I make no representation or demonstration of support or rejection of concerted activity. However, nothing herein shall prevent me from filing and pursing proceedings before the United States Equal Employment Opportunity Commission or similar state government agency that enforces state fair employment laws (although if I choose to pursue a claim following the exhaustion of such administrative remedies, that claim would be subject to the provisions of this Agreement).

I agree that any claims brought under this binding arbitration Agreement shall be brought in the individual capacity of myself of the Company. This binding arbitration Agreement shall not be construed to allow or permit the consolidation or joinder of other claims or controversies involving any other employees or parties, or permit such claims or controversies to proceed as a class or collective action. No arbitrator shall have the authority under this agreement to order any such class or collective action. Any dispute regarding the scope or enforceability of this Agreement shall be resolved by a court, not the arbitrator. By signing this agreement, I am agreeing to waive any substantive or procedural rights that I may have to bring or participate in an action brought on a class or collective basis. This agreement is not intended to interfere with my rights to collectively bargain, to engage in protected, concerted activity, or to exercise other rights protected under the National Labor Relations Act.

In addition to any other requirements imposed by law, the following procedural requirements shall apply unless the Parties mutually agree otherwise. The arbitrator selected shall be a retired federal

> judge or judge of the state court of general jurisdiction, or an otherwise qualified individual to whom the parties mutually agree. The arbitrator shall follow and observe the Federal Rules of Civil Procedure and the Federal Rules of Evidence, and all rules of pleading (including the right to file a Motion to Dismiss), all rules of evidence, all rights to resolution of the dispute by means of motions for summary judgment, judgment on the pleadings, and directed judgment or non-suit shall apply and be observed. The arbitrator shall have the immunity of a judicial officer from civil liability when acting in the capacity of an arbitrator, which immunity supplements any other existing immunity. Likewise, all communications with the arbitrator during or in connection with the arbitration proceedings shall be considered privileged. As reasonably required to allow full use and benefit of this agreement, the arbitrator shall extend the times set for the giving of notices and setting of hearings. Awards shall include the arbitrator's written reasoned opinion. Resolution of all disputes shall be based solely upon the law governing the claims and defenses pleaded, and the arbitrator may not invoke any basis (including bot not limited to, notions of "just cause") other than such controlling law.

*See* Exhibit B. Plaintiff returned to work for Napleton after he signed the Arbitration Agreement until his separation on November 14, 2022. *See* Exhibit A, ¶ 5.

Plaintiff's Complaint is clearly grounded in factual assertions that arise from and out of his employment relationship with Napleton. Plaintiff's Complaint alleges that Napleton subjected Plaintiff to hostile work environment racial harassment, disparate treatment based upon race, and retaliation in violation of 42 U.S.C. § 1981, Title VII of the Civil Rights Act of 1964, 42 U.S.C. 2000c, et seq., and the Illinois Human Rights Act, 775 ILCS 5/1 et seq. [ECF No. 1]. Indeed, Plaintiff's theories for liability are founded upon claims that Napleton racially harassed Plaintiff and/or failed to promptly correct and prevent any alleged racial harassment, treated Plaintiff differently and worse than similarly situated white employees with respect to compensation, discipline, and termination decisions, and retaliated against Plaintiff after he reported the conduct to members of Defendant's management team and human resources. [ECF No. 1, ¶¶ 107-109, 118, 125-127, 134-136, 145, 152-154, 161-163, 172, 178-180].

Plaintiff's claims are specifically encompassed by the Arbitration Agreement and, thus, must be heard exclusively in an arbitral forum. Therefore, for the reasons established below, Plaintiff's claims are preempted by the FAA and relegated to mandatory arbitration, based upon Plaintiff's voluntary acceptance and execution of the Arbitration Agreement.

**II.     LEGAL STANDARD**

The FAA governs questions of arbitrability in both federal and state courts. *Jain v. de Mere*, 51 F.3d 686, 688 (7th Cir. 1995). The FAA reflects a "liberal federal policy favoring arbitration," *AT&T Mobility LLC v. Conception*, 563 U.S. 333, 131 S. Ct. 1740 (2011) (quoting *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 214 (1983). Section 2 of the FAA provides that an arbitration clause in "a contract evidencing a transaction involving commerce . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2.

Courts should uphold and enforce arbitration agreements according to their terms unless they are invalidated by "generally applicable contract defenses, such as fraud, duress, or unconscionability." *Doctor's Assocs., Inc. v. Casarotto*, 517 U.S. 681, 687 (1996). Therefore, the standard for compelling arbitration is low. *Conway v. Done Rite Recovery Services*, Case No. 14-cv-5182 (N.D. Ill. Apr. 30, 2015). Moreover, arbitration agreements in the employment context are broadly enforceable under the FAA. *Circuit City Stores, Inc. v. Adams,* 532 U.S. 105 (2001). Any doubts concerning the scope of arbitral issues should be resolved in favor of arbitration. *Valuepart v. Faruhar*, Case No. 14-cv-3004 (N.D. Ill. Sept. 29, 2014).

To that end, courts in the Seventh Circuit have routinely enforced arbitration provisions with respect to workplace discrimination. *See Tinder v. Pinkerton Sec., 305 F.3d 728, 736 (7th Cir. 2002) (holding that the plaintiff was bound to arbitrate his claims pursuant to an arbitration

5

agreement); *Michalski v. Circuit City Stores, Inc.*, 177 F.3d 634, 673 (7th Cir. 1999) (same); *Scaffidi v. Fiserv Inc.*, Case No. 05 C 1046, 2006 WL 2038348, *1, *15 (E.D. Wis. 2006) (same); *Dalope v. United Health Care*, Case No. 03 C 8919, 2004 WL 2325688, *1, *6 (N.D. Ill. 2004). As the Seventh Circuit explained, "[w]e [have] found, as have most other Circuits, that Congress did not intend to prohibit the use of pre-dispute arbitration agreements for the resolution of Title VII claims.[2] *Michalski*, 177 F.3d at 635. Accordingly, a "district court must promptly compel arbitration once it is satisfied that the parties agreed to arbitrate." *Tinder*, 305 F.3d at 735.

### III.  LEGAL ARGUMENT

This Court should compel Plaintiff to arbitrate his claim against Napleton. Upon being presented with a motion to compel arbitration, this Court must make three determinations. First, the Court must determine whether there is a valid written agreement to arbitrate in place. *Prima Paint Corp. v. Flod & Conklin Mfg. Co.*, 388 U.S. 395, 400 (1967). Second, the Court must determine whether the dispute falls within the scope of the arbitration agreement. *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 626 (1985). Third, the Court must determine if the plaintiff has agreed to arbitrate those claims, so as to warrant an order compelling arbitration. *Zurich Am. Ins. Co. v. Watts Indus., Inc.*, 417 F.3d 682, 687 (7th Cir. 2005) (*citing* 9 U.S.C. § 4). In this case, compelling arbitration is appropriate because there is a valid arbitration agreement and Plaintiff's Complaint falls within the scope of the arbitration agreement.

---

[2] It is well established that Congress did not intend to exclude from arbitration the claims asserted in Plaintiff's Complaint. *Circuit City Stores, Inc.,* 532 U.S. at 105 (affirming that arbitration agreements covering employment-related claims are enforceable). To the contrary, courts and federal policy have unambiguously established that claims arising under federal discrimination statutes are subject to arbitration. *See Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 29-30 (1991) (holding that Congress did not intend to preclude claims arising under the Age Discrimination in Employment Act from arbitration); *Pryner v. Tractor Supply Co.*, 109 F.3d 354 (7th Cir. 1997) (recognizing that employees may individually agree to arbitrate their statutory claims under Title VII); *Gibson*, 121 F.3d at 1126 (acknowledging that an employee and employer may contractually agree to submit federal claims); Civil Rights Act of 1991, Pub.L. No. 102-166 sec. 118, 105 Stat. 1071, 1081 (1991) (not codified) (authorizing use of arbitration where appropriate to resolve disputes arising under certain federal statutes, including Title VII).

**A. Federal Law Favors Arbitration.**

As an initial matter, Napleton notes that federal law favors this matter being relegated to an arbitral forum pursuant to Plaintiff's agreement. The United States Supreme Court has affirmed that the FAA applies to arbitration agreements in the employment context. *See, e.g., Rent-A-Center West, Inc. v. Jackson*, 561 U.S. 63 (2010) (holding that § 1981 claims should be arbitrated); *Circuit City Stores v. Adams*, 532 U.S. 105 (2001). The FAA was enacted to overcome courts' reluctance to enforce arbitration agreements. *See, e.g., Allied-Bruce Terminix Cos. v. Dobson*, 513 U.S. 265, 270 (1995). It not only placed such agreements on equal footing with other contracts, but also established a federal policy in favor of arbitration agreements, notwithstanding any state substantive or procedural policies to the contrary. *See, e.g., Green Tree Financial Corp. v. Randolph*, 531 U.S. 79, 89-90 (2000) (Supreme Court has "rejected generalized attacks on arbitration that rest on 'suspicion of arbitration as a method of weakening the protections afforded in the substantive law to would-be-complainants'"); *Southland Corp. v. Keating*, 465 U.S. 1, 10 (1984) (in enacting the FAA, "Congress declared a national policy favoring arbitration and withdrew the power of the states to require a judicial forum for the resolution of claims which the contracting parties agreed to resolve by arbitration").

This policy is so significant that "even claims arising under a statute designed to further important social policies may be arbitrated." *Green Tree Financial Corp.*, 531 U.S. at 90. The FAA permits private parties to "trade [] the procedures . . . of the courtroom for the simplicity, informality, and expedition of arbitration." *Gilmer v. Interstate/Johnson Lane Corp.* 500 U.S. 20, 31 (1991). Moreover, the United States Supreme Court has warned against judicial rulings designed to erode FAA precedence "by indirection." *Circuit City Stores v. Adams*, 532 U.S. 105, 107 (2001). It is instead the intent of Congress "to move the parties to an arbitrable dispute out of

court and into arbitration as quickly and easily as possible" and have "questions of arbitrability . . . be addressed with a healthy regard for the federal policy favoring arbitration." *Moses H. Cone Memorial Hospital*, 460 U.S. at 22-25. Courts must defer to arbitration "unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute. Doubts should be resolved in favor of coverage." *Steelworkers v. Warrior Gulf Co.*, 363 US 574, 582-583 (1960). Clearly, any objection to relegating this matter to mandatory arbitration should be viewed with a healthy regard of skepticism and must be analyzed against the strong public policy favoring arbitration. For this reason, and those established below, this Court should grant Napleton's motion and mandate Plaintiff's claims be heard in an arbitral forum.

**B. The Arbitration Agreement Is Valid Under Illinois Law and Encompasses Plaintiff's Claims.**

The Arbitration Agreement is a valid and enforceable contract. In considering the enforceability of an arbitration agreement, Courts must first determine whether the dispute is subject to arbitration pursuant to valid arbitration agreement. *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 83-84 (2002). Courts within the Seventh Circuit apply state contract law when determining whether there is a valid agreement to arbitrate. *See e.g. James v. McDonald's Corp.*, 417 F.3d 672, 677 (7th Cir. 2005); *Gibson v. Neighborhood Health Clinics*, 121 F.3d 1126, 1130 (7th Cir. 1997). Under Illinois law, a valid contract consists of an offer, an acceptance and consideration. *Melena v. Anheuser-Busch, Inc.*, 847 N.E.2d 99, 109 (Ill. 2006) (citing *Steinberg v. Chicago Med. Sch.*, 371 N.E.2d 634, 639 (Ill. 1977)). All three are present here.

**1. Napleton Offered Plaintiff the Option to Agree To Mandatory Arbitration.**

By virtue of Plaintiff being provided notice of the Arbitration Agreement as a condition of continued employment, Napleton "offered" the Arbitration Agreement to Plaintiff for purposes of creating a valid and enforceable contract. *Melena*, 847 N.E.2d at 109. The provision of arbitration

materials to an employee, even without further training on said materials, is sufficient to create an "offer" of an arbitration agreement. *Mecherle v. Trugreen, Inc.*, 2012 WL 4097221, *4 (N.D. Ill. 2012). Here, Plaintiff cannot dispute that he received a copy of the Arbitration Agreement, which he had an opportunity to review before affixing his signature. *See* Exhibit B. Clearly, Plaintiff was "offered" the Arbitration Agreement as a condition of continued employment.

### 2. Plaintiff Agreed to be Bound by Napleton's Arbitration Agreement.

Plaintiff's acceptance of the Arbitration Agreement further demonstrates its validity and enforceability. In fact, Plaintiff manifested his acceptance to the terms of the Arbitration Agreement in two ways by: (1) clearly and plainly affixing his signature to the Arbitration Agreement after receiving it and having an opportunity to review and consider it; and (2) continuing his employment with Napleton after being offered to enter into the Arbitration Agreement as a condition of continued employment.

First, Plaintiff's signature clearly establishes his agreement to be bound by the provisions of the Arbitration Agreement. *Bauer v. Morton's of Chicago*, 2000 WL 149287, *2 (N.D. Ill. 2000); *Flynn v. AerChem, Inc.,* 102 F. Supp. 2d 1055, 1060 (S.D. Ind. 2000) (concluding that the plaintiff's signature constituted sufficient evidence that she accepted the arbitration agreement). In fact, both Plaintiff and Napleton's signatory signed the Arbitration Agreement. *See* Exhibit B. Plaintiff never revoked his agreement. Put simply, Plaintiff's signature establishes that Plaintiff accepted the terms and conditions of the Arbitration Agreement.

Second, Plaintiff's continued employment with Napleton after being notified of (and signing) the Arbitration Agreement further establishes Plaintiff's acceptance of the Arbitration Agreement. "Under Illinois law, continued employment after notice of an arbitration program constitutes acceptance and consideration." *Mecherle*, 2012 WL 4097221 at *5. Here, it is

undisputed that Plaintiff continued to work for Napleton for over two years after Plaintiff signed the Arbitration Agreement. *See* Exhibit A, 5; *see also* [ECF No. 1, ¶ 11]. Therefore, even if the Court were to disregard Plaintiff's signature on the Arbitration Agreement, which establishes—in and of itself—Plaintiff's assent to the Arbitration Agreement, Plaintiff further accepted the Arbitration Agreement by continuing his employment after receiving notice of it. *Id.* Under either independent scenario, Plaintiff clearly accepted the Arbitration Agreement.

### 3. The Arbitration Agreement Is Supported By Adequate Consideration.

Finally, the Arbitration Agreement is supported by adequate consideration under Illinois law. For a contract to be enforceable under Illinois law, there must be consideration. *Melena*, 847 N.E.2d at 109. Consideration is the bargained-for exchange of promises or performances and may consist of a promise, an act or a forbearance. *McNerney v. Charter Golf, Inc.*, 680 N.E.2d 1347, 1350 (Ill. 1997) (citing Restatement (Second) of Contracts § 71 (1981)). Any act or promise that is of benefit to one party or disadvantage to the other is a sufficient consideration to support a contract. *Steinberg*, 371 N.E.2d at 639. An employer's promise to be bound by the arbitration process itself serves as mutual consideration in the underlying arbitration agreement. *Michalski*, 177 F.3d at 636.

Here, the provisions in the Arbitration Agreement provide that **each** party is bound to arbitrate their claims against the other party. *See* Exhibit B ("I AND THE COMPANY AGREE to utilize binding individual arbitration as the sole and exclusive means to resolve all disputes that may arise out of or be related in any way to my employment…"). The Arbitration Agreement was not a one-sided bargain. Because there was a mutual waiver of the right to bring a civil action, there is adequate mutual consideration in the underlying arbitration agreement. *Michalski*, 177 F.3d at 636. Thus, the Arbitration Agreement is valid and binding as to its arbitration provisions.

Moreover, as established above, Plaintiff's continued employment after receiving—and executing—the Arbitration Agreement suffices to establish the Arbitration Agreement was supported by sufficient consideration. "[U]nder Illinois law, continued employment is sufficient consideration for the enforcement of employment agreements." *Johnson v. Orkin, LLC*, 928 F.Supp.2d 989, 1004 (N.D. Ill. 2013); *Mecherle*, 2012 WL at *5 ("Under Illinois law, continued employment after notice of an arbitration program constitutes acceptance and consideration.").

Put simply, there is no colorable evidence calling into question the Arbitration Agreement's validity or enforceability, which contains all the elements of a contract under Illinois law. Thus, the only remaining question is whether Plaintiff's claims contained in his Complaint fall within the scope of the Arbitration Agreement. As established immediately below, the answer is unequivocally "yes."

**C. Plaintiff's Claims are within the Scope of the Arbitration Agreement.**

The claims in Plaintiff's Complaint are that Napleton subjected Plaintiff to hostile work environment racial harassment, disparate treatment based upon race, and retaliation in violation of 42 U.S.C. § 1981, Title VII of the Civil Rights Act of 1964, 42 U.S.C. 2000c, et seq., and the Illinois Human Rights Act, 775 ILCS 5/1 et seq. [ECF No. 1]. Such claims fall squarely within the purview of the Arbitration Agreement. In fact, the Arbitration Agreement provides that the parties agree to "resolve all disputes that may arise out of or be related in any way to my employment with the Company…" *See* Arbitration Agreement. Moreover, the Arbitration Agreement further states, in relevant part:

> Included within the scope of this Agreement are all disputes, whether based on tort, contract, statute (including, but not limited to, any claims of discrimination, harassment and/or retaliation, whether they be based on the Title VII of the Civil Rights Act of 1964, as amended, or any other state or federal law or regulation)…

11

*See* Exhibit B.

In this case, not only do the circumstances of Plaintiff's allegations derive solely from and relate to his employment relationship Napleton (ECF No. 1, ¶¶ 11-102), but Plaintiff's "harassment," "discrimination," and "retaliation" claims are specifically identified as the type of claims covered by the Arbitration Agreement. *See* Exhibit B. And, although it is unfathomable to conceive a scenario in which Plaintiff's claims would not fall under the purview of the Arbitration Agreement, it is black letter law that "any doubts concerning the scope of arbitral issues should be resolved in favor of arbitration." *Moses H. Cone*, 460 U.S. at 24-25. But, in this case, there is no doubt that Plaintiff's claims fall flatly within the scope of the Arbitration Agreement and must be heard exclusively in an arbitral forum.

## CONCLUSION

Plaintiff agreed to submit any employment claims he might have against Napleton to binding arbitration. Plaintiff cannot now be allowed to circumvent his contractual obligation by filing a Complaint in this Court. Consequently, this Court should compel arbitration and dismiss Plaintiff's Complaint pursuant to Federal Rule of Civil Procedure 12(b)(1) for lack of subject matter jurisdiction, or, in the alternative, compel arbitration and stay the underlying proceedings pending the completion of that arbitration.

Dated: December 15, 2023

Respectfully submitted,

**ED NAPLETON ELMHURST IMPORTS, INC.**

*/s/ Craig R. Annunziata*
Craig R. Annunziata
Dana N. Ferrell
**FISHER & PHILLIPS, LLP**
10 South Wacker Drive, Suite 3450
Chicago, Illinois 60606
T (312) 346-8061

FP 48915356.1

 F (312) 346-3179
cannunziata@fisherphillips.com
dferrell@fisherphillips.com

*Attorneys for Defendant*

**CERTIFICATE OF SERVICE**

I, Craig R. Annunziata, of the law firm of Fisher & Phillips, LLP, certify that I have filed the foregoing **DEFENDANT'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION TO COMPEL ARBITRATION AND DISMISS PLAINTIFF'S COMPLAINT** with the Northern District of Illinois Court via the Court's CM/ECF notification system, which will send notification of such filing by electronic service to counsel of record as follows:

Chiquita Hall-Jackson
Hall-Jackson & Associates P.C.
180 W. Washington St., Suite 820
Chicago, IL 60602
chj@hall-jacksonandassociates.com

*Attorney for Plaintiff*

Dated: December 15, 2023

/s/ Craig R. Annunziata